**In re NARRAGANSETT CLOTHING COMPANY, Debtor.**

**Bankruptcy No. 90–10149.**

United States Bankruptcy Court, D. Rhode Island.

Jan. 3, 1995.

Whitton E. Norris, III, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for trustee.

Joseph B. Garb, Post–Confirmation Trustee, Wellesley, MA.

Joseph M. DiOrio, Hinckley, Allen & Snyder, Providence, RI, for Official Unsecured Creditors' Committee.

Allan M. Shine, Winograd, Shine & Zacks, P.C., Providence, RI, for debtor.

John V. Snellings, Peabody & Brown, Boston, MA, for Signal Capital Corp.

*DECISION AND ORDER DENYING MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.'S, REQUEST FOR RELIEF AFTER RECONSIDERATION OF DECISION AND ORDER DATED NOVEMBER 4, 1993*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Before the Court is the Motion for Reconsideration filed by the law firm Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin"), seeking relief from our November 4, 1993 Order Setting Final Compensation in the amount of $420,000 for Services, and Ordering Disgorgement of $68,000 which we determined was excessive. The Order now under reconsideration concerns, *inter alia*, the compensation and reimbursement of expenses for Mintz Levin's representation of the Chapter 11 Trustee, both pre and post confirmation.[1]

After a careful and labor-intensive examination of the record of the entire case, including the voluminous entries contained in the several applications submitted by Mintz Levin, we concluded on November 4, 1993, that $420,000 was the *maximum* compensation due Mintz Levin for legal services rendered to the Trustee.[2] By the time that decision was filed, Mintz Levin had already received, on account, $488,000. By said Order, therefore, Mintz Levin was required to disgorge the overpayment and return $68,000 to the estate for distribution to creditors.

■ On April 11, 1994, Mintz Levin filed its Memorandum in Support of Final Allow-

---

1. Mintz Levin has filed the following requests for compensation and reimbursement of expenses:

   (1) Application dated January 25, 1991 (Doc. # 246) requesting fees of $261,835.60 and expenses of $30,593.48 for a **TOTAL REQUEST OF $292,429.08.** Services for the period April 10, 1990, through January 24, 1991;

   (2) Supplement to Counsel's First Application dated March 11, 1991 (Doc. # 267) requesting fees of $13,856.50 and expenses of $31,721.09, for a **TOTAL REQUEST OF $45,577.59.** Services for the period January 25, 1991, through February 4, 1991. This request modifies Mintz Levin's January 25, 1991, filing by substituting $13,856.50 for the $20,000 future services entry and by substituting $31,721.09 for its prior expense request of $30,593.48. **Thus, as of February 4, 1991, Mintz Levin's TOTAL FEE REQUEST was $255,692.10 and its TOTAL EXPENSE REQUEST was $31,721.09;**

   (3) Second Application dated February 7, 1992 (Doc. # 390) requesting fees of $216,659.50 and expenses of $16,354.60, for a **TOTAL REQUEST OF $233,014.10.** Services for the period February 5, 1991, through November 30, 1991;

   (4) Final Application dated February 24, 1993 (Doc. # 484) requesting fees of $139,256.00 and expenses of $11,216.51 for a **TOTAL REQUEST OF $150,472.51.** Services for the period December 1, 1991, through January 31, 1993.

   Based on these applications, the **GRAND TOTAL OF FEES AND EXPENSES REQUESTED was $670,899.80.**

2. On further review of the four fee applications filed by Mintz Levin, we note that the aggregate fee and expense requests total $670,899.80. An earlier total of $720,000 included a $20,000 "future services" charge, and duplicated an expense request as a result of Mintz Levin's filing of a supplement to its First Application. That pleading is somewhat confusing as it did not adequately summarize the total compensation and expense requests for the period April 10, 1990, through February 4, 1991. We note that in its First Application, Mintz Levin's itemization for reimbursement of expenses differs slightly from the list contained in the March 11 Supplement, where many of the same entries are in lesser amounts than in the original request, i.e. telecopy expense reduced from $5,969.50 to $5,270.00; reproductions reduced from $5,448.10 to $5,074.30; postage reduced from $1,265.90 to $1,113.40; Lexis reduced from $569.79 to $550.54; food services (a non-reimbursable item) reduced from $659.49 to $585.05. No explanation is given for these differences, and we allow Mintz Levin the benefit of the assumption that they are merely the result of more careful scrutiny, when looked at the second time.

ances on Reconsideration of our November 4, 1993, Decision and Order. That memorandum generally repeats arguments we have already heard during oral arguments and in earlier writings, as to why Mintz Levin believes its fee requests are justified, and why it presumes we overlooked and/or failed to recognize and appreciate its work in this case. On a motion to reconsider, however, it is the burden of the moving party to assert newly discovered evidence or a manifest error of fact or law. *Champagne v. Equitable Credit Union (In re Champagne)*, 146 B.R. 506 (Bankr.D.R.I.1992), citing *In re Wedgestone Fin.*, 142 B.R. 7, 8 (Bankr.D.Mass. 1992). Mintz Levin clearly fails to show anything new, and although we did grant reconsideration, and notwithstanding Mintz Levin's self-serving and often misleading protestations to the contrary, we are unable to discern any showing of manifest error of fact or law in our November 4, 1993 Decision and Order. All Mintz Levin really does in its latest pleading is to again express disappointment and disagreement with this Court's rulings. Accordingly, our prior findings and conclusions remain unchanged, and, in fact, they are reinforced by this second examination of the case, necessitated by the instant motion.

### DISCUSSION ON MOTION TO RECONSIDER

■ Mintz Levin, in essence, invites us to join it in playing mathematical shell games while rearguing its position ad infinitum, but our appetite for the contest is exhausted.[3]

Our November 4, 1993 Decision and Order plainly sets forth our findings of fact and conclusions of law, based upon the entire record in the case. That Mintz Levin finds fault with our conclusions is not surprising,

considering the large disgorgement ordered. However, the submission of a lengthy, twenty-nine page memorandum containing many self-serving statements, and self-addressed accolades to the firm (amid numerous glaring inaccuracies), may not drive or be the basis for altering or modifying what we consider to be a correct result.

While it would serve no useful purpose to turn this decision into a point by point rebuttal of Mintz Levin's reargument (in fact we refuse to be drawn into such an exercise), by way of example only, we offer the following:

1. The contention that this Court based its conclusions and findings *principally* on the failure of J.L. Sanford, is inaccurate and misguided. (*See* Memorandum, at 2–4.) Our findings and conclusions were made upon consideration of all of the relevant lodestar factors, including *inter alia:* (1) the extent to which the services of Mintz Levin benefitted this estate and its creditors; (2) the hourly rates charged; and (3) the reasonableness of the time expended, in view of the results obtained.

2. Mintz Levin also misspeaks when it argues that the Court was fully informed as to both the actual and potential benefits, and the risks, associated with the acceptance of the J.L. Sanford offer. (*See* Memorandum, at 4, n. 4.) This conclusory assertion is inconsistent with and not supported by the record. We agree that all such sales involve risk, but this is hardly the issue. It was not until after the damage became obvious, i.e. that the creditors' expectation of receiving the $1.39 Million due on the Sanford note had evaporated, that the Trustee and his counsel revealed that the Zimmerman guarantee was completely without substance, or that the

3. In writing the November 4, 1993 Decision and Order, we examined *every* single entry in *every* single application, and reviewed each for: reasonableness of the services rendered and time expended; duplication of services performed by the trustee; actual benefit derived by the estate; and reasonableness of hourly rates charged; ran the calculations several different ways; and, ultimately performed our duty by making detailed findings, conclusions and rulings. Mintz Levin argues incessantly that our findings are not justified, that our calculations are lacking and that, in short, it should get paid what it requests. Rather

than being forced to respond, and then to re-respond to the Movant's repeated complaints of unfair treatment by this Court, we invite Mintz Levin to please address its grievances to the appellate courts. Having done our best in this matter, we would appreciate and be most grateful to have the guidance of the District Court and/or the Court of Appeals in this case and in the area of professional's compensation generally. We have found the Movant's arguments not to be persuasive, and conversely feel that our responses to its arguments are falling on deaf ears.

collection of the balance of the Sanford note was so totally dependent on the management skills and business success of the purchaser. That the Trustee and his counsel conducted no meaningful due diligence to verify the substance of the Zimmerman guarantee, which turned out to be worth only a small fraction of the face amount, belies the extraordinary level of skill which the Movant insists entitles it to the compensation requested.

3. We also reject Mintz Levin's argument that the Court based its final order on an incorrect premise, i.e. that Mintz Levin was responsible for the Sanford default. (*See* Memorandum, at 5.) We have never suggested that Mintz Levin was responsible for the default. What we have *repeatedly* noted is that our earlier interim awards were influenced in very large part by Mintz Levin, and the Trustee's, overtures that they had professionally investigated and triumphantly negotiated a sale of the company which would yield a significant dividend to creditors. Now, consistent with our responsibility and charge, upon consideration of the final outcome of the case (a luxury not present when the interim fee awards were made), we think it is clear that our earlier awards were excessive in light of the results achieved, and the actual benefit derived by the estate.

4. Finally, we deny, as false, the comments in footnote 5 of the Applicant's Memorandum. Considering Mintz Levin's concentration and preeminence in bankruptcy matters, it is a disingenuous red herring to complain that "local limits on hourly rates were not disclosed to it as a condition to its retention." It is a basic and well known principle that neither this nor any other Court is required, or expected, to "disclose" its long established and often published standards regarding compensation of professionals. We presume as a fact, and charge Mintz Levin with knowledge of the law in this jurisdiction. In light of said presumption, which it probably does not care to rebut, we resent even more Mintz Levin's comments on page 7, where it makes the blatant (and quite possibly, sanctionable) misstatement that this Court "authorized Mintz Levin to be employed as counsel to the trustee on a general

retainer to be paid at Mintz Levin's standard hourly rates (see Retention Order annexed as Appendix E)," and in footnote 6 of its Memorandum, that "the Order authorizing Mintz Levin's retention might be considered seriously misleading." The April 20, 1990 Order authorizing Mintz Levin's employment clearly provides:

> "*ORDERED:* That the compensation and reimbursement of expenses of Richard E. Mikels, Whitton E. Norris and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. for services rendered on behalf of the Trustee shall be hereafter *fixed by the Court upon appropriate application* therefore with the above-captioned estate to be obligated therefore." (emphasis added).

This Court may not and does not pre-approve the employment of professionals "at their standard hourly rates." Such a practice would run contrary to several express provisions of the Bankruptcy Code, as well as the controlling cases on the issue. This type of deliberate inaccuracy significantly lessens and erodes the credibility of the Applicant, in this Court's view.

The foregoing discussion and specific references support our comfort level in the conclusion that there is no manifest error of fact or law in the November 4, 1993 decision that requires or warrants modification. We have noted that the Movant's arguments are repetitious, and since we have previously addressed similar contentions in our Decision and Order dated November 4, 1993, *In re Narragansett Clothing Co.*, 160 B.R. 477 (Bankr.D.R.I.1993), that document is incorporated herein by reference, in its entirety.

For all of the above reasons, it is hereby **ORDERED:** (1) that the total final fee allowance of Mintz Levin in this case is $420,000; (2) that the firm is **ORDERED to disgorge $68,000**; and (3) **to pay said sum to the Trustee for distribution to creditors, within 45 days of this Order.** Requests for stay of this Order should be addressed to the District Court, as we would deny the same.

Enter Judgment consistent with this opinion.